UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NET RESULTS GROUP, INC.<br><br>32 Wine Street,<br>Hampton, VA 23669,<br><br>    Plaintiff<br><br>v.<br><br>TRAVELERS EXPRESS COMPANY., INC.<br>t/a MONEYGRAM<br><br>1550 Utica Avenue South,<br>St. Louis Park, MN 55416,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW your Plaintiff, NET RESULTS GROUP, INC. ("NRG"), by counsel, and files this Complaint with regard to the aforementioned case. For its Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction based on 28 U.S.C. § 1332, as the parties are of citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. The plaintiff, Net Results Group, Inc. ("NRG") is a D.C. corporation with its principle place of business in Hampton, Virginia.

3. The Defendant, Travelers Express Company, Inc., t/a Moneygram ("Moneygram") is a Minnesota Corporation.

4. Venue is proper in this Court pursuant to a Master Agreement for Professional Consulting Services dated July 14, 2005 ("MSA") and its Telecom Audit Services Work Order 1 dated July 14, 2005 ("WO1"), copies of which are attached as Exhibit 1 and incorporated herein.

## FACTS RELATED TO THE CASE

5. On July 14, 2005, William Putney executed the MSA on behalf of Moneygram for work to be performed by NRG. At the same time, Anthony P. Ryan executed WO1 on behalf of Moneygram for work to be performed by NRG under the auspices of the MSA.

6. Under the MSA, NRG was to provide certain wireline auditing and cost reduction work for Travelers. Some of this work was to be described in specific Work Orders for both analysis and prospective savings.

7. In September 2005, NRG performed an audit of Moneygram invoices for certain AT&T accounts. NRG found a credit due Moneygram in the amount of $2,584,304.60, which results in a net credit of 1,279,719.87 after discounts for International Toll-Free related issues.

8. On October 20, 2005, Robert Walsh of Moneygram sent an email to Tim Smith and Justin Fuller of NRG authorizing them to go forward and present these findings to Traci Grailer of AT&T. After much discussion with Mr. Walsh and his team revolving around validating NRG's findings, Moneygram told NRG to no longer pursue the credit. In a separate matter, on December 14, 2005, Mr. Smith sent Mr. Walsh a recommendation for $211,347.56 in annual savings for the Toll-Free rates in question on a new contract with AT&T.

9. On December 21, 2005, Angeline J. Maack of Moneygram sent another letter to Mr. Smith of NRG stating that Moneygram would not accept the recommendations of NRG relating to International Toll-Free savings, originally made in September and October and more formally in December 2005. Moneygrams's actions were an attempt to avoid paying NRG for

the savings it identified and constituted a material breach of contract. Moneygram, through Ms. Maack, further attempted to justify Moneygram's material breach of contract by saying that the Customer's director of Procurement had not authorized a prospective savings report.

10. In addition to the International Toll-Free issues, NRG discovered credit issues on Moneygram's AT&T Domestic and International Frame Relay services and presented them to Moneygram. The credits identified were in the amounts of $141,179.95 and $100,771.67, respectively. In an October 27, 2005 e-mail to Justin Fuller (NRG), Robert Walsh discussed moving forward on the International Frame Relay credit issue and said the Domestic Frame relay Credit Issue should be ignored. On a conference call in November 2005, Jim Foster (Moneygram) told Mike Stoliker (NRG) that Moneygram was handling the International Frame Relay issue and no longer requires NRG's assistance. There are no exclusions preventing NRG from auditing, presenting recommendations or pursuing recoveries for frame relay costs in the MSA. NRG believes Moneygram received credits on these issues and NRG is entitled to payment for these credits.

11. Moneygram's letter of December 21, 2005 ignores the provisions of Section C of WO1 that specifically identified Mr. Walsh as Moneygram's point of contact for all authorizations.

12. Under the terms of the MSA and WO1, if Moneygram did not accept the recommendations of NRG, the contract requires that Moneygram not implement the recommendations for at least nine months.

13. Upon information and belief, Moneygram renegotiated its contract with AT&T during the months of November and December 2005. Upon information, and in material breach

of the MSA and WO1, Moneygram used the recommendations that NRG identified as the basis for rates that were made part of the Moneygram's renegotiated contract with AT&T.

14. Because of Moneygram's breach of the WO1 and MSA, NRG is entitled to its compensation. NRG is owed 35% of domestic frame relay credits it negotiated or assisted in acquiring for Moneygram, 35% of international frame relay credits it negotiated or assisted in acquiring for Moneygram, 35% of AT&T historic savings for International Toll-Free issues it negotiated or assisted in acquiring for Moneygram, and AT&T Prospective savings for International Toll-Free Issues it negotiated or assisted in acquiring for Moneygram; including potential contract credits and set-offs.

15. NRG has invoiced Moneygram as required by the MSA and has made further demand for payment under the terms of the contract; yet, all invoices and demands have been ignored.

### Count I
### (Breach Of Contract)

16. NRG realleges and incorporates herein by reference ¶¶ 1-15 above.

17. Moneygram's actions as set forth above constitute a material breach of contract.

18. As a direct and foreseeable result of Moneygram's breach of contract, NRG has incurred damages of at least $588,063.00, the exact amount to be proven at trial.

WHEREFORE, the NRG demands judgment against the Defendant in an amount not to be less than $588,063.00 and reserves the right to increase this demand based upon newly acquired information that results from an examination of any discovery applicable. In addition, NRG requests its costs and attorneys' fees expended in maintaining this action, and pre-judgment interest at the statutory rate from the date of filing and post-judgment interest at the statutory rate from the date of judgment, and any other relief the court deems necessary.

Respectfully submitted,

NET RESULTS GROUP, INC.

By Counsel:

Dated: May 18, 2006

_____
Richard O. Wolf (D.C. Bar No. 413373)
MOORE & LEE, LLP
1750 Tysons Boulevard, Suite 1450
McLean, Virginia  22102-4225
Tel:  (703) 506-2050
Fax:  (703) 506-2051
E-mail: r.wolf@mooreandlee.com

Of Counsel:
Thomas K. Plofchan, Jr.
Plofchan & Associates
46175 Westlake Drive, Suite 320
Potomac Falls, Virginia  20165
Tel.: (703) 406-7616